# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### at CHATTANOOGA

| | | |
|---|---|---|
| JESSICA LAUREN BROWN, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No. 1:16-cv-412 |
| v. | ) | |
| | ) | Judge Collier |
| HAMILTON COUNTY, TENNESSEE, | ) | Magistrate Judge Steger |
| and certain Unnamed Sheriff's Deputies, | ) | |
| | ) | |
| *Defendants.* | ) | |

## **M E M O R A N D U M**

Before the Court are motions for summary judgment on behalf of Defendant Hamilton

County, Tennessee (Doc. 17) and Defendants Certain Unnamed Sheriff's Deputies, individually

(Doc. 19) on all of Plaintiff Jessica Lauren Brown's claims.  Plaintiff filed a timely consolidated

response (Doc. 36) and Defendants timely replied (Docs. 41, 42).  For the foregoing reasons, the

Court will **DISMISS** Plaintiff's claims **WITH PREJUDICE**.

## I.      BACKGROUND

The allegations in this case surround the booking and detention of Plaintiff Jessica Lauren

Brown, who turned herself in to Hamilton County Jail on October 15, 2015, to be booked on a

charge of aggravated assault.

Plaintiff was born as a male named Jason Lee Bowen.  Plaintiff was previously booked

under this name and gender on January 27, 2000, April 30, 2008, May 20, 2008, and January 15,

2009.  Plaintiff later began transitioning to the female gender as early as 2000, however, and by

2015, had legally changed her name, her driver's license, and her Social Security card to reflect

her name as Jessica Lauren Brown and her gender as female.  (Doc. 20-2 [Brown Dep.] at 3.)

Plaintiff did not take any further steps to change her name or identity relative to her prior criminal record.  (*Id.* at 4.)

### A.     Plaintiff's Sworn Allegations

Plaintiff's sworn allegations regarding her booking process are as follows:  Plaintiff's booking officer asked her if she was transgendered and if she "had a vagina down there."   Doc. 36-1 [Brown Interrog.]).   Plaintiff told him yes, that she had completed a gender reassignment surgery, and Plaintiff showed her driver's license to confirm that she was legally recognized as female.  The officer began processing her as a male and told her to sit on the male bench.  Plaintiff was searched by a male officer.  Plaintiff was asked if she had ever been arrested under a different name and Plaintiff said yes and gave the officer her birth name.  The officer pulled an old mugshot of Plaintiff, printed it, then waived it towards the officer/inmate area and said "I told you that's a dude."  Employees and inmates laughed.  Male inmates walked past Plaintiff and made lewd comments such as, "she got a Nicki Manaj booty," "dude you know the sergeant say she a man," and "I ain't no faggot, I'll kill that bitch."  Males were allowed to use the jail's phones at the same time as Plaintiff, but not at the same time as other females.  Plaintiff told her husband she was really scared.  The officers called Plaintiff "Jason Bowen" and "Mr. Bowen," which was confusing and hurtful to Plaintiff.

At the time of lockdown, the sergeant instructed the booking officer to take Plaintiff in the cell with the "other men."  Plaintiff said she would not go without being medically examined.  Plaintiff told the sergeant that she gave the booking officer her license.  When a copy of her license was being made, an employee walked up to Plaintiff and said that he heard from the others about her sex change and how he thought it was hot and said congratulations.  Female inmates in the area made threatening statements that Plaintiff "wasn't a real woman," and "that they'd let the man

beat [her] ass when they found out a man was put with them." Plaintiff was ultimately held with female inmates.

When Plaintiff was signing out on bond, she noticed her folder stated "Jason Lee Bowen." She told the officers that was not her legal name, but the jail refused to correct it. As Plaintiff was waiting next to a glass window room in order to be released, male inmates made additional lewd comments towards her.

After her arrest, Plaintiff's newest mug shot appeared in "Just Busted," a publication which attains open records information. (Doc. 20-2 [Brown Dep.] at 7, 8-14.) The publication placed her booking photograph alongside the name Jason Lee Bowen.

Plaintiff brought a civil action on October 14, 2016 pursuant to 42 U.S.C. § 1983[1] seeking damages against Hamilton County, Tennessee and certain Unnamed Sheriff's Deputies, individually ("Deputies"). (Doc. 1.) Under Count One, Plaintiff alleges the Deputies "embarrassed her, demeaned her, and placed her in a dangerous situation" because of her status as a transgendered woman in violation of the Fourteenth Amendment Equal Protection Clause. Under Count Two, Plaintiff alleges Hamilton County also engaged in gender discrimination because "[t]he Hamilton County Sheriff's Department employs the officers in charge of booking in the Hamilton County Jail." Under Count Three, Plaintiff alleges Hamilton County engaged in negligent hiring, training, management, supervision, and retention of its officers in charge of booking. Under Count Four, Plaintiff alleges Hamilton County Sheriff's Department intentionally disclosed that Plaintiff is transgendered woman in violation of her right to privacy.

---

[1] Plaintiff mistakenly cited 29 U.S.C. § 1983 as her cause of action in her complaint. (Doc. 1.) Because this error was not addressed by Defendants, the Court construes Plaintiff's civil rights case as arising under 42 U.S.C. § 1983.

## B.    Evidence before the Court

Plaintiff has brought forward evidence of her sworn allegations as addressed above, portions of the official policy of the Hamilton County Sheriff's Office, as well as the depositions of five officers employed by Hamilton County Jail.  Four of the officers stated they did not recall having any interactions with Plaintiff.  One officer, Lee Gray, recalled processing Plaintiff at the Jail on October 15, and reported,

> When I got the folder of Jessica L. Brown I processed it has [sic] normal, however there was an issue due to a warrant on Jason L. Bowen which had not been taken care of.  When I processed Jessica L. Brown I created a new record because all of the information had been changed to my knowledge at that time.  I was told that this individual was to be booked as Jason L. Bowen with the alias of Jessica L. Brown, I do not recall who told me to do this I do remember that I advised that Jessica L. Brown had all new identification to include if I remember correctly social security number [sic].  Then I was told that unless they have the full surgery they were still the other person and the name in question would be the alias.

(Doc. 36-7 [Gray Dep.] ¶ 7.)

Defendants have submitted evidence regarding the general booking process at Hamilton County Jail as well as Plaintiff's booking documents.

Defendant's evidence reflects that every individual to be detained at Hamilton County Jail undergoes essentially the same intake and booking procedure, though the process is not always a linear one.  (Doc. 20-4 [Hughes Aff.] ¶ 4.)  An intake officer will first collect the person's property and search the detainee.  (*Id.* ¶¶ 7-8.)  The detainee then waits in a "horseshoe" seating area, or in a temporary holding cell.  Female detainees are directed to a bench in front of the booking counter or in a cell named 1HC1, a female holding cell.  (*Id.* ¶¶ 13-14.)  At different times, the detainee is called to see various officers as well as a magistrate judge.  (*Id.* ¶ 15.)

When seeing the booking/fingerprint officer, the detainee is asked for his or her social security number and the detainee's fingerprints are taken by the use of a livescan fingerprint

machine. (*Id.* ¶¶ 15-17.)  Each detainee is also assigned an "SPN" number upon booking, which identifies the detainee in Hamilton County's computer system.  (Doc. 36-8 [Spletzer Dep.] at 19-20.)  The detainee's fingerprints are then sent directly to the Tennessee Bureau of Investigation ("TBI"), which then forwards them to the Federal Bureau of Investigation ("FBI").  (*Id.*)  After transmission, the officer receives an Automated Fingerprint Information System ("AFIS") response from both the TBI and the FBI.  (*Id.* ¶ 18.)  The response contains the name of the person by which the individual's fingerprint record was originally established.  (*Id.*)

In the event of a discrepancy in names, the Sheriff's Office compares the name returned by the AFIS response to the Sheriff's Office database to determine whether the detainee has been previously booked at the Hamilton County Jail.  (Doc. 20-7 [Young Aff.] ¶ 13).  If the detainee has been previously booked, he or she must be booked under the name and SPN number used by the individual at the time of their first arrest, and not under the name given by the individual at the time of present processing.  (*Id.*)  This policy applies to all individuals booked.  For example, a female first booked under her maiden name would later be booked under the same name, even if she had married and legally changed her name.  (*Id.*)  No officer has the authority to use a name for booking purposes other than the name provided by the FBI.  (*Id.*)

The information attained during the booking process is entered into a data management system.  (Doc. 20-3 [Bernard Aff.] ¶ 5).  Booking information is subject to the Tennessee Open Records Act.  *See* Tenn. Code Ann. § 10-7-503.  The Hamilton County Sheriff's Office provides booking information to the public pursuant to its website, www.hcsheriff.gov.  Publication of information on the website is triggered automatically by the completion of the booking process through the Sheriff's computer system. (Doc. 20-3 [Bernard Aff.] ¶¶ 9-10).  No officer has either the authority or the ability to keep the information private, absent a court order.  (*Id.*)

Hamilton County Jail's data management system indicates that Plaintiff was initially booked as a female under the name Jessica Lauren Brown and was assigned SPN number 541159. (*Id.* ¶ 14.) On Plaintiff's Uniform Arrest Report and Booking Checklist, that number is crossed through and replaced with SPN number 252330, an earlier generated SPN number originally assigned to an individual with the name Jason Lee Bowen. (*Id.* ¶ 10.) Plaintiff's Booking Card contains the name Jason Lee Bowen and indicates that Plaintiff is a female who was searched by a female officer and assigned to the female holding cell, 1HC1. (*Id.* ¶ 5.)

## II. PROCEDURAL HISTORY

On April 13, 2018, Plaintiff filed an amended complaint naming Hamilton County, Sheriff Jim Hammond, Deputy Lee Grey, Joseph Grey, and Certain Unnamed Sheriff's Deputies as Defendants, without moving the Court for leave to do so as required by Federal Rule of Civil Procedure 15(a)(2). (Doc. 37.) Defendants opposed the consideration of the amended complaint, arguing that Plaintiff violated Rule 15(a)(2). (Doc. 43.) Plaintiff later notified the Court that the amended complaint was being withdrawn, and this Court found the amended complaint moot.

On September 19, 2017, both Defendants filed motions for summary judgment seeking judgment as a matter of law on all of Plaintiff's claims. (Docs. 18, 20.) The Hamilton County Attorney's Office appeared on behalf of the Deputies. Plaintiff filed a consolidated response on April 13, 2018 (Doc. 36), to which both Defendants have replied (Docs. 41, 42.)

## III. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897

(6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc*., 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc*., 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a plaintiff is "not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2-3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

The Court's role at summary judgment is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## IV.    DISCUSSION

### A)    Count One: Gender Discrimination by the Deputies

Hamilton County Attorney's Office argues on behalf of the Deputies that summary judgment is appropriate on Count One because Plaintiff has not amended her complaint to name

particular individuals as party defendants, or served such persons with process as of the date of the case's dispositive motion deadline. (Doc. 20 at 10.) Plaintiff responds stating the unknown officer designation is appropriate because "none of the officers answering the written questions in deposition form remember or recall anything about Jessica Brown or her arrest, with the exception of one." (Doc. 36 at 18.)

There are no federal statutes or specific procedural rules which provide for the use of fictitious or "John Doe" defendants in federal court. *See* David M. Epstein, Annotation, *Propriety of Use of Fictitious Name of Defendant in Federal District Court*, 139 A.L.R. Fed. 554 (2018). Plaintiffs have, with varying results, included fictitious defendants in their federal complaints. *Id.* The use of a fictitious name, however, does not relieve a plaintiff from complying with generally applicable statutes of limitations or the Federal Rules of Civil Procedure. *See Petty v. Cty. of Franklin, Ohio*, 478 F.3d 341, 345–46 (6th Cir. 2007); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). "Simply identifying an unknown defendant in the complaint by the pseudonym of John Doe or Richard Roe is not enough to commence a civil action against that unknown defendant." *Smith*, 2009 WL 3762961, at *5.

The statute of limitations relevant to Plaintiff's § 1983 claim required her to commence her action within one year after her cause of action accrued. *Moore v. Tennessee*, 267 F. App'x 450, 455 (6th Cir. 2008); *see also* Tenn. Code. Ann. § 28-3-104(a)(3). Accrual occurs when a plaintiff has a complete and present cause of action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

Plaintiff's cause of action against the Deputies accrued upon her release from booking, October 15, 2015. Given that Plaintiff has yet to properly move the Court to amend her complaint, nearly three years have passed since Plaintiff's cause of action accrued, a span of time well beyond the statute of limitations for § 1983. The only way Plaintiff could now amend her complaint and

comply with the statute of limitations period is through Fed. R. Civ. P. 15(c), which allows a plaintiff to amend a complaint, the date of the amendment relating back to the filing date of the original complaint.

Fed. R. Civ. P. 15(c) allows for the substitution of parties when the new party to be named received notice of the action such that it would not be prejudiced in defending on the merits and when the party knew or should have known that the action would have been brought against it, but for a mistake as to the party's proper identity. Fed. R. Civ. P. 15(c). Nonetheless, Fed. R. Civ. P. 15(c) provides no relief to Plaintiff under these circumstances. The Court of Appeals for the Sixth Circuit has held that a plaintiff's lack of knowledge pertaining to an intended defendant's identity does not constitute a "'mistake concerning the party's identity' within the meaning of Rule 15(c)." *Moore*, 267 F. App'x at 455; *see also Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) ("Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)(3)(B).")

Because the statute of limitations period as to Plaintiff's § 1983 claim against the Deputies has run, and because Fed. R. Civ. P. 15(c) cannot salvage Plaintiff's claim,[2] Count One of Plaintiff's complaint will be dismissed with prejudice.

---

[2] Alternatively, the Court notes that Plaintiff has not complied with Fed. R. Civ. P. 4(m), which requires service upon a defendant within 120 days of the filing of a plaintiff's complaint. The Sixth Circuit has held that dismissal is appropriate when unnamed defendants are not served with process within this period of time. *Petty v. Cty. of Franklin, Ohio*, 478 F.3d 341, 354-46 (6th Cir. 2007).

**B)** **Counts Two and Three: Gender Discrimination by the Hamilton County Sheriff's Department; Negligent Hiring, Training, Management, Supervision and Retention by the Hamilton County Sheriff's Department**

Defendants claim summary judgment is appropriate as to Counts Two and Three of Plaintiff's § 1983 complaint because "the treatment complained of by the Plaintiff, while regrettable if true, does not constitute a civil rights violation." (Doc. 41 at 1.) Plaintiff argues the County and the Sheriff "turned a blind eye to transgenders" and others similarly situated and Jessica Brown suffered "disparate treatment because she is transgender." (Doc. 36 at 7, 8.)

"[We] engage[ ] in a two-pronged inquiry when considering a municipal-liability claim. We first ask whether the plaintiff has asserted the deprivation of a right guaranteed by the Constitution or federal law. Second, we analyze whether the alleged deprivation was caused by the defendants acting under color of state law." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 606–07 (6th Cir. 2007) (citations omitted); *Brock v. McWherter*, 94 F.3d 242, 242 (6th Cir. 1996); *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995). The first inquiry exists because § 1983 does not create substantive rights, but instead acts as a vehicle for the enforcement of constitutional rights against state actors. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

In Counts Two and Three of Plaintiff's Complaint, Plaintiff alleges she "was treated differently due to her transgendered status." (Doc. 1 at 4-5.) Plaintiff does not cite to particular provisions of the Constitution in these Counts, but she does state Defendant engaged in gender discrimination. In Plaintiff's reply memorandum, she alleges the facts show violations of Plaintiff's Due Process and Equal Protection rights. (Doc. 36 at 20.) Plaintiff does not point to a specific instance during the booking process where her constitutional rights were violated. Rather, Plaintiff's allegations recount her entire booking process. Construing the evidence in the light most favorable to Plaintiff, Plaintiff was treated differently by (1) being processed as a male

detainee under her former name, Jason Lee Bowen; (2) being required to sit on a male's bench and use the phones at the same time as males; (3) being searched by a male officer; (4) being humiliated by a corrections officer who printed her old mugshot and waived it towards the officer/inmate area; (5) and by being verbally harassed by corrections officers and male and female inmates.

Defendants contest whether any of these actions constitute violations of Plaintiff's constitutional rights. Some case law supports Defendants arguments. *See, e.g.*, *Harlan v. Holland*, No. 1:13-CV-263, 2013 WL 6668734, at *3-4 (E.D. Tenn. Dec. 18, 2013) (finding corrections officer's use of a racial epithet, flapping of leash on handcuffs, whistling, and making of lashing sounds "reprehensible and very unprofessional" but "not constitutional violations"). However, few cases currently address the plight of transgendered individuals in the criminal justice system. Because an analysis of whether any aspect of Plaintiff's booking process amounted to a violation of her constitutional rights would be extensive, the Court will assume without deciding for purposes of the discussion here that a Constitutional violation of Plaintiff's rights did occur.

If this is the case, however, the Court must engage in the second inquiry—whether the alleged deprivation was caused by the defendant acting under color of state law. *Powers*, 501 at 606–07. Defendant Hamilton County argues that a municipality cannot be held liable under a theory of respondeat superior for any purported violation of Plaintiff's rights by the acts of the Hamilton County Corrections Officers. (Doc. 18 at 13.) Plaintiff argues that a municipality may be held liable under § 1983 if the acts complained of were those of a policymaker. (Doc. 36 at 7.)

### 1.     Acts of Hamilton County Corrections Officers

It is well established that a municipality cannot be held liable under § 1983 on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Local governments are not liable for injuries inflicted by their employees. *Id.* at 694. "Instead, it is when execution

of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* In other words, a county is only liable if it can fairly be said that the county itself is the wrongdoer. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 112 (1992). A plaintiff must show that there was an actual constitutional violation for which the county is responsible. *Howard v. City of Girard, Ohio*, 346, F. App'x 49, 51 (6th Cir. 2009).

Count Two of Plaintiff's complaint reads as one that relies upon a theory of respondeat superior. Plaintiff alleges Hamilton County "employs the officers in charge of booking at the Hamilton County Jail," Plaintiff was "treated differently because of her transgendered status *by the officers* in charge of booking her," and the disparate treatment was "*by the officers* at the Hamilton County Jail." (Doc. 1 (emphasis added).) Plaintiff appears to seek to hold Hamilton County liable because its agents, the corrections officers in the booking area, committed wrongdoing. To the extent Count Two attempts to attach vicarious, respondeat superior liability on Hamilton County for the acts of the officers who booked her, it cannot stand. The law is established: Hamilton County cannot be liable under § 1983 on a theory of respondeat superior for the acts of its employees. *Monell*, 436 U.S. at 691.

Plaintiff counters in her response that the acts complained of were "performed by policymakers and they amounted to a custom or practice." (Doc. 36 at 7.) Plaintiff also states the policies in place "were not designed to protect individuals in the same position as the plaintiff." (*Id.*) Defendant replies stating Plaintiff does not identify a policymaker, nor does Plaintiff cite authority for the proposition that the lack of a jail policy specifically directed to transgendered persons amounts to a constitutional violation. (Doc. 41 at 3.)

The actions Plaintiff protests were performed by Hamilton County Corrections Officers. Yet, "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing *final* policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (emphasis added); *see also Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 121 (1992) (observing the Supreme Court has held "the wrongful conduct of a single officer without any policy-making authority did not establish municipal policy"). Plaintiff points to no evidence to support a finding that the corrections officers who booked her had authority to establish "final policy" regarding the booking of transgendered individuals. *Pembaur*, 475 U.S. at 483. On the contrary, in the deposition of Corrections Officer Lee Gray, for example, Gray states, "All policies must be approved by the Sheriff before it is final." (Doc. 37-7 at 5.) Plaintiff does not dispute this statement so it is not improper for the Court to consider it. Thus, a correction officer's actions while booking Plaintiff or any correction's officer's answers to written deposition questions cannot be regarded as the policy of Hamilton County at large—those officers can only be considered Hamilton County's agents. As addressed above, Hamilton County cannot be held liable for the actions of its agents.

Plaintiff also points to Chapter 90, Section 90.05 of the Hamilton County Jail's Policy on "Admission, Records and Release" as approved by Sheriff Jim Hammond. (Doc. 36-2.) Plaintiff cites to sections regarding inmate classification, administrative segregation, protective custody, and intake, but ultimately takes issue with the fact that "[t]he policy provided by the County in response to requests for production of documents does not deal with the handling of transgenders such as the plaintiff." (Doc. 36 at 3.) Thus, to the extent Sheriff Jim Hammond is considered the

policy maker at issue, the Court will assess whether the lack of a policy on the booking of transgendered individuals caused a constitutional violation.

### 2.     Hamilton County Jail Policy

A plaintiff can identify a policy, connect the policy to a county, and thereafter demonstrate that a particular injury to their constitutional rights was incurred because of the execution of that policy. *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004).    In several cases, the Supreme Court has engaged in lengthy discussion as to the degree of causation between the policy and the plaintiff's injury which must be found before a county or municipality can be found liable under § 1983.   This is because, "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989).  A court must avoid falling back to "de facto respondeat superior liability" which was "explicitly prohibited" by the Supreme Court.  *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996).  As a result, there must be a "direct causal link between the municipal action and the deprivation of federal rights."  *Board of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).  And the policy identified by a plaintiff must be "the moving force of the constitutional violation in order to establish the liability of [the] government body."  *Polk Cty. v. Dodson*, 454 U.S. 312, 454 (1981).  "To adopt lesser standards of fault and causation would open municipalities to unprecedented liability."  *City of Canton*, 489 U.S. at 391.

Here, Plaintiff does not allege Hamilton County engaged in policymaking against transgender individuals; rather, Plaintiff is concerned with Hamilton County's *in*action.  (Doc. 36

at 20 ("it is clear that the County has failed to enact an appropriate policy and to protect individuals coming within its jails.").)

> To state a municipal liability claim under an 'inaction' theory, Plaintiff must establish: (1) the existence of a clear and persistent pattern of discrimination by municipal employees; (2) notice or constructive notice on the part of the City; (3) the City's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction; and (4) that the City's custom was the 'moving force' or direct causal link in the constitutional deprivation.

*Arendale v. City of Memphis*, 519 F.3d 587, 599–600 (6th Cir. 2008); *Powers*, 501 F.3d at 607; *Doe*, 103 F.3d at 508; *see also City of Canton*, 489 U.S. at 389. "'Deliberate indifference' in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference" to the constitutional rights of the government's citizens. *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 369 (6th Cir. 2005). *Compare Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) (finding plaintiff failed to present any evidence showing city had an unwritten custom of failing to provide medical attention to pretrial detainees prior to arraignment), *with Women Prisoners v. District of Columbia*, 93 F.3d 910 (D.C. Cir. 1996) (finding District of Columbia liable for sexual abuse of female inmates by corrections officers through evidence inmates had filed complaints and written letters to prison administrators to no avail and the pattern of harassment was obvious and widely known within the system).

Here, Plaintiff has presented allegations concerning her own experience during her booking process on a sole charge. Plaintiff cannot rely on this single instance to prove municipal liability. *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005) ("*Doe* makes clear that the plaintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference."). Plaintiff has presented no evidence

indicating transgenders have suffered from a "clear and persistent pattern of discrimination by municipal employees;" no evidence showing Hamilton County received "notice or constructive notice" of such discrimination; and no evidence Hamilton County was deliberately indifferent such that its failure to act could be said to amount to an official policy of inaction. *Arendale*, 519 F.3d at 599-600. Even if Plaintiff did suffer a violation of her constitutional rights, a matter contested by the parties, Plaintiff has not brought "sufficient evidence from which a jury could reasonably find" for her as to the liability of Hamilton County on a theory of government inaction because she has failed to present evidence of Hamilton County's deliberate indifference to the rights of transgendered persons. *Anderson*, 477 U.S. at 248-49.[3]

### 3. Plaintiff's Other Theories of Municipal Liability

In Count Three, Plaintiff also alleges Hamilton County is liable under theories of negligent hiring, training, management, supervision and retention of officers in charge of booking at Hamilton County Jail.

### a. Negligent Hiring or Retention of Employees

As to Plaintiff's theories of negligent hiring or retention of employees, Defendants are correct to observe that "injuries inflicted by governmental negligence are not addressed by the United States Constitution." *Daniels v. Williams*, 474 U.S. 327, 333 (1986). Plaintiff points to no other federal laws Hamilton County violated when hiring the corrections officers at issue. Because Plaintiff maintains her action under § 1983, however, she must assert the deprivation of a right

---

[3] The Court notes that because Plaintiff has not presented evidence indicating Hamilton County's deliberate indifference to the rights of transgendered persons, factual disputes in the record regarding Plaintiff's own experience—for example, whether she was searched by a male or female officer—do not present genuine issues of material fact. *Celotex*, 477 U.S. at 323. The Court has presumed Plaintiff's constitutional rights were violated, yet still cannot afford Plaintiff relief against Hamilton County under § 1983.

guaranteed by the Constitution or federal law. 42 U.S.C. § 1983. Plaintiff's theory of negligent hiring or retention of the corrections officers in charge of booking must fail.

### b.     Failure to Train

Plaintiff next alleges Hamilton County failed to train its employees to book transgender individuals similarly situated as Plaintiff. Defendants argue summary judgment is appropriate on this theory because Plaintiff fails to show Hamilton County was aware of prior unconstitutional actions by its employees and later failed to respond. Plaintiff points to a lack of uniform training on how to adequately handle transgender individuals during booking.

A government's failure to train its employees adequately constitutes a policy or custom when it can be said that the failure amounts to "deliberate indifference" toward the constitutional rights of persons in its domain. *City of Canton*, 489 U.S. at 388-89. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. If the violation of citizen's rights is not already known to a municipal actor, an obvious need to act can otherwise arise "'in a narrow range of circumstances' where 'a violation of federal rights may be a *highly predictable* consequence of [the municipalities failure to act]." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648-49 (6th Cir. 2012) (emphasis in original) (alteration in original).

The Supreme Court has taken account for the fact that a certain officer may be a sole bad actor, for which a government entity should not be responsible, stating,

> [t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to

enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id.* at 390-91 (citations omitted).

Here, Plaintiff has, again, presented to the Court allegations concerning her own experience during her booking process on a sole charge. Plaintiff has not presented evidence indicating that Hamilton County knew their training program was causing the violation of transgendered citizen's rights, of which the County was thereafter "deliberately indifferent." *City of Canton*, 489 U.S. at 388-89; *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005) ("Fisher must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.").

Plaintiff has not otherwise shown that the need for more training was so obvious that the violation of federal rights was a "highly predictable" consequence of Hamilton County's inaction. *Heyerman*, 680 F.3d at 648-49. Taking the evidence in the light most favorable to Plaintiff, there was a lack of uniform training as to the booking of transgendered detainees. Some officers reported being trained on how to process transgendered detainees, and some did not. (Doc. 36 Exh. 4-7.) However, "there is no constitutional requirement to 'train' writ large." *Hanson v. Madison Cty. Det. Ctr.*, No. 17-5209, 2018 WL 2324252, at *18 (6th Cir. May 22, 2018) ("The fact that two officers testified that they did not receive training on the use of force upon being hired does not establish that the County's failure to train these officers rose to the level of a 'policy' reflecting deliberate indifference."); *Deruso v. City of Detroit*, 121 F. App'x 64, 66 (6th Cir. 2005) ("Although Plaintiffs pointed the court to deposition testimony from officers that they received no training since leaving the police academy, Plaintiffs neglected even to allege that this purported deficiency amounts to deliberate indifference or that it actually caused their injury.").

Plaintiff did not present any other evidence about Hamilton County's training program regarding the booking of transgendered detainees. Thus, if Plaintiff's constitutional rights were violated, Plaintiff has not shown that the violation stemmed not from one "officer's shortcomings," or insensitivities, but from a "policymaker's inadequate decision." *Currie v. Haywood Cty., Tenn*., 234 F. App'x 369, 373 (6th Cir. 2007). Plaintiff's theory of Hamilton County's failure to train its corrections officers must fail.

### c. Failure to Manage or Supervise

Plaintiff next alleges Hamilton County failed to manage or supervise its employees to book transgendered individuals similarly situated as Plaintiff.

In order to show supervisory liability, a plaintiff must demonstrate that a supervisor implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of offending officers. *Frodge v. City of Newport*, 501 F. App'x 519, 532 (6th Cir. 2012). A supervisory official's failure to supervise, control or train an offending officer is not actionable unless the supervisor either encouraged the specific incident of misconduct or otherwise directly participated in it. *Id.*

Here, Plaintiff has not named a particular supervisor who authorized, approved, or acquiesced in unconstitutional conduct. Defendants correctly note that Plaintiff "lumps together" theories of supervisory liability and inadequate training. (Doc. 41 at 6.) Because Plaintiff has not named a supervisor responsible for implicitly authorizing, approving, or knowingly acquiescing in the unconstitutional conduct of offending officers, Plaintiff's theory of supervisory liability must fail.

**C)      Count Four: Public Disclosure of Private Facts Violation of Right to Privacy**

Plaintiff next alleges Defendants intentionally disclosed Jessica Lauren Brown as transgendered to the public by using her current booking picture and former masculine name. Defendant Hamilton County argues summary judgment is appropriate as to Count Four because a violation of one's right to privacy is an action sounding in tort, but does not amount to a constitutional violation appropriate for a remedy under § 1983.  (Doc. 18 at 2.)  Defendant also argues such disclosure was not the fault of the County, but that the disclosure of Plaintiff's mugshot was mandated under Tennessee State Law.  (*Id.*)  Plaintiff argues there is information in the record to demonstrate Plaintiff was treated differently than other arrestees and that "the County chose to process the plaintiff based on old, and now inaccurate information."  (Doc. 36 at 14.)

"[T]he Constitution does not encompass a general right to nondisclosure of private information."  *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981).  The Sixth Circuit has instead observed that an individual has no constitutional right to privacy in the criminal record pertaining to him.  *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (finding court clerk's publication of arrest records, including social security numbers and birth dates, did not implicate a constitutional right to privacy, even where identity theft resulted); *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) ("one's criminal history is arguably not a private 'personal matter' at all, since arrest and conviction information are matters of public record"); *Desanti*, 653 F.2d at 1088 (juveniles do not have a right to privacy in their criminal records); *Bailey v. City of Port Huron*, No. 05-cv-71296, 2006 WL 2811271, at *2-4 (E.D. Mich. Sept. 28, 2006) (dismissing § 1983 claim and holding no violation of constitutional right to privacy occurred when plaintiffs name, mugshot, husband's occupation, and city of residence were released).

In the Sixth Circuit, an informational right to privacy has been found where (1) the release

of information could place an individual at substantial risk of bodily harm or death from a perceived likely threat, *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1064 (6th Cir. 1998) (identity of undercover officers released to drug conspirators officers had investigated), or where (2) the information was a gratuitous and unnecessary release of the intimate details of a rape, *Bloch v. Ribar*, 156 F.3d 573, 686 (6th Cir. 1998). "The informational right to privacy is a narrow one, but it does protect information 'of a sexual, personal, and humiliating nature.'" *Jones v. City of Brusnwick*, 704 F. Supp. 2d 721, 742 (N.D. Ohio 2010) (quoting *Lambert*, 517 F.3d at 440) (finding factual issue as to whether informational right to privacy was violated when misdemeanor arrestee was required to take booking photo in her underwear). In other situations, the Sixth Circuit has rejected a general constitutional right of nondisclosure of personal information by government officials. *Martin v. Cleveland Heights Police Dep't*, No. 1:13 CV 1750, 2014 WL 272221, at *5 (N.D. Ohio Jan. 23, 2014).

Here, Plaintiff alleges her constitutional right to privacy was violated by the publication of her booking photograph next to her former legal name, Jason Lee Bowen. Viewing the evidence in the light most favorable to Plaintiff, the corrections officer who booked Plaintiff chose to book her under her former name in order to reveal her transgender status. An analysis of the actions of the corrections officers, however, must be kept separate from an analysis of fault attributable to Hamilton County. *See Monell*, 436 U.S. at 694 (finding local governments not liable purely because they employ a tortfeasor).

Hamilton County has a policy of booking individuals under their previously generated SPN number and original booking name. For individuals who have been booked under a former name, for example, women who are booked under their maiden name, but later change their last names, their former names also appear next to their booking photographs. Every individual's booking

photograph is an open record, as required by Tennessee state law. *See* Tenn. Code Ann. § 10-7-503. In Plaintiff's case, this process resulted in her former legal name appearing next to her new booking photograph. This occurrence, however, did not result in a violation of Plaintiff's informational right to privacy as a matter of law. Plaintiff has no general constitutional right to the nondisclosure of her criminal record. *DeSanti*, 653 F.2d at 1090. Plaintiff has not otherwise demonstrated the disclosure of such information placed her at a substantial risk of bodily harm from a perceived likely threat, *Kallstrom*, 136 F.3d at 1064, that the release of information was like the gratuitous and unnecessary release of the intimate details of a rape, *Block*, 156 F.3d at 686, or that Plaintiff's body was unnecessarily exposed in her photograph, such as being required to take the booking photograph in her underwear, *Jones*, 704 F. Supp. 2d at 742.

Plaintiff alleges she suffered damages including pain and suffering due to the public disclosure by the Hamilton County Sheriff's Department. (Doc. 1.) Such is also the case, however, for the great number of individuals whose mugshots are available via mass publication. *See* Eumi K. Lee, *Monetizing Shame: Mugshots, Privacy, and the Right to Access*, 70 Rutgers U. L. Rev. 557, 557-58 (2018) ("The mass publication of mugshots online permanently stigmatizes millions of Americans with the mark of criminality and undermines two basic principles of our criminal justice system—presumed innocence and redemption"). "Because the majority of states deem mugshots open records under their public records laws, mugshot companies and the press have the constitutional right to publish them." *Id.* As a result, under current law, this Court can afford Plaintiff no relief.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, the Court will **DISMISS** Plaintiff's claims **WITH PREJUDICE.**

**An appropriate order will enter.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**